Cynthia DUKE *v.* REGIS HAIRSTYLISTS

CA 95-1337 935 S.W.2d 600

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1996

*The Whetstone Law Firm P.A.*, by: *Gary Davis*, for appellant.

*Anderson & Kilpatrick*, by: *Michael P. Vanderford*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant, Cynthia Duke, filed a claim for benefits alleging that she developed carpal tunnel syndrome early in 1994 as a result of her job with the appellee, Regis Hairstylists. On *de novo* review, the Commission denied and dismissed the claim, finding that appellant failed to establish her injury with medical evidence supported by objective findings. On appeal, appellant contends that there were objective findings sufficient to establish a compensable injury. We disagree, and we affirm.

Arkansas Code Annotated § 11-9-102(5)(D) (Repl. 1996) provides that a compensable injury must be established by medical evidence, supported by "objective findings" as defined in § 11-9-102(16). That subsection defines "objective findings" as follows:

(16)(A)(i) "Objective findings" are those findings which cannot come under the voluntary control of the patient.

(ii) When determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain; for the purpose of making physical or anatomical impairment ratings to the spine, straight-leg-raising tests or range-of-motion tests shall not be considered objective findings.

(B) Medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty[.]

The facts are not in serious dispute. Appellant was employed as a hairstylist by appellee and, during her employment, developed difficulties with her hands for which she sought medical treatment. The central question in the case at bar is whether her physician's diagnosis of carpal tunnel syndrome is supported by "objective findings" as defined by Ark. Code Ann. § 11-9-102(16).

Dr. Earl Peeples, an orthopedic surgeon specializing in hand surgery, testified concerning the manner in which he arrived at his diagnosis. As abstracted, he stated:

I conducted a physical examination on April 4 and the conclusions are recorded in the third paragraph of my letter: "On examination the patient is in no acute distress. The examination of the hands reveal strongly positive left and mildly positive right Tinel's sign. She has a positive compression test on the left. Hyperextension and hyperflexion tests also tend to cause discomfort and numbness of the median nerve distribution. This patient has classic findings of carpal tunnel syndrome."

The first test conducted was a Tinel's test. . . . The Tinel's test is an indicator of irritated or damaged nerve fibers. When you tap on the area, the patient generally describes a tingling or electrical sensation out to where the nerve goes. . . . You tap along the nerve path and wait for the patient to respond. I also tap in some areas that are not in the nerve pathway so that if the patient is not being totally straightforward with me, I give them an opportunity to report areas that would be misleading. So I don't tell the patient what to expect. I tap in a variety of areas and ask them if they feel any particular sensation. If that correlates

with the path of the median nerve, then that's considered a positive Tinel's test.

I also did a positive compression test. The compression test is done by placing two fingers over the median nerve just above or at the edge of the ligament and holding additional pressure. In a normal nerve, no numbness will be caused. In a nerve that is under pressure and has carpal tunnel syndrome, usually within twenty seconds it will become positive and there will be tingling in the median nerve distribution. In her case the test was positive. I also did hyperextension and hyperflexion tests. These tests are done for specific sensations and usually describing the light tingling.

I did not need to perform EMG or nerve conduction studies on Ms. Duke to confirm the diagnosis of carpal tunnel syndrome. I was able to make the diagnosis based on her physical exam. I did not feel the tests were needed.

■ Based on our review of the evidence, we hold that the Commission correctly found that the appellant failed to establish her injury with medical evidence supported by objective findings. The results of each of the tests performed by Dr. Peeples were based on the patient's description of the sensations produced by various stimuli. Such descriptions are clearly under the voluntary control of the patient and therefore, by statutory definition, do not constitute objective findings. Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 1996).

We are not unmindful of appellant's argument that the findings obtained by Dr. Peeples' testing were objective findings because the tests contained various safeguards to detect malingering and ensure reliability. Dr. Peeples testified:

Q. You were aware of the fact, probably, that in 1993 the Arkansas Legislature passed a new Workers' Compensation Act, were you not?

A. Yes, sir.

Q. Doctor, let me ask you one area that the Legislature has indicated in the Act that we are required to prove with respect to compensability of workers' compensation claims. The Legislature says, according to Act 796 of 1993, that a compensable injury must be established by medical evidence

supported by objective findings. Objective findings are then described as those findings which cannot come under the voluntary control of the patient.

Now, with that in mind, Doctor, is it your opinion that your diagnosis of carpal tunnel syndrome for Ms. Duke is supported by objective findings?

A. Yes, sir.

Q. Can you tell us that those objective findings are?

A. The positive Tinel's test, the positive compression test, the positive hyperflexion and hyperextension test.

Q. Those are tests that are, in your opinion, reflecting findings that are out of the voluntary control of the patient; is that correct?

A. Well, I think it's important to understand that the system can only work if you reasonably assume that people are telling you how their body feels. And to check a nerve or to check many things, you have to ask someone, "Is this tender?"

Now, that is different from the subjective description of, "I have pains that shoot out my ears," or, "I have pains that run down my spine." That is a subjective description.

But if I tap a particular location or if I place a joint in a particular position and say, "Does this hurt as opposed to this position?" then I'm asking for the patient to use their nervous system to tell me what makes them comfortable or uncomfortable. And that is objective. The patient must communicate that to me. Obviously, I cannot perform these tests on a comatose patient.

But those are not subjective in the sense that — subjective findings, such as, "Please bend over and touch the floor," and the patient subjectively won't bend forward. And then you can't assume from that that the back has no motion. That is a different thing than the patient cooperating with the [physician] to produce objective medical data.

The examination of the abdomen, you put pressure on the abdomen and you say, "Well, does it hurt here?" And

then if it hurts, "Does it hurt more when I press in or does it hurt more when I let go?" The classic finding of rebound, which is necessary for the diagnosis of appendicitis, depends on the patient being able to tell you whether it hurts more when you let go or whether it hurts more when you apply direct pressure.

So this is just another similar type examination that the patient and physician, as a team, produce data, and you do some things during the exam to see if the patient is faking. You deliberately exam[ine] some areas that aren't tender, that don't cause symptoms. And if every place you tap on the arm, they say, "Oh, that makes it tingle," then that's not a positive Tinel's test. That's hysteria.

Q. The purpose of conducting the tests that may demonstrate a finding which is inconsistent with what the patient is telling — the purpose of conducting not only the test directly on the nerve that you are particularly concerned about but in other areas on the arm and so forth is to take that finding out of the voluntary control of the patient?

A. Well, it's to weed out malingerers.

The foregoing testimony is typical of the extensive evidence adduced at the hearing to show that the tests performed by Dr. Peeples were reliable and accurate. Nevertheless, we are constrained to reject appellant's argument. In passing Act 796 of 1993, which made far-reaching changes in Arkansas's workers' compensation law, the legislature made it plain that the provisions of that law were to be strictly and literally construed by the Commission and the courts. *See* Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). The General Assembly further declared:

When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so. It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act. In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physi-

cal condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Ark. Code Ann. § 11-9-1001 (Repl. 1996).

 Construing the Act strictly, as we must, it is apparent that the tests performed by Dr. Peeples did not produce objective findings within the meaning of § 11-9-102(16)(A)(i). That subsection excludes from the definition of "objective" all findings save those that "*cannot* come under the voluntary control of the patient." (Emphasis added). Despite the evidence tending to show the accuracy and reliability of the tests performed on appellant, it is nevertheless clear that they depended on voluntary responses and that the findings obtained from them could be controlled by a knowledgeable patient. We are consequently obliged to hold that they did not constitute objective findings as defined in Ark. Code Ann. § 11-9-102(16).

Affirmed.

JENNINGS, C.J., and ROBBINS and STROUD, JJ., agree.

MAYFIELD and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I dissent from the majority opinion affirming the decision of the Worker's Compensation Commission which held that the appellant had failed to establish her injury with "medical evidence supported by objective findings." Ark. Code Ann. § 11-9-102(5)(D) (Repl. 1996) provides that "A compensable injury must be established by medical evidence, supported by 'objective findings,'" defined in § 11-9-102(16)(A)(i) (Repl. 1996) as, "those findings which cannot come under the voluntary control of the patient."

First, it is important to note that all that is involved in this case, at this point, is whether the appellant sustained a compensable injury. That is what the full Commission's opinion states in its first and concluding paragraphs — that the appellant did not establish a compensable injury.

Thus, we are *not* concerned with Ark. Code Ann. § 11-9-102(16)(A)(ii) (Repl. 1996) which says that "when determining physical or anatomical impairment" pain may not be considered, etc.

In the second place, Dr. Earl Peeples, appellant's physician, testified that the Tinel's test, compression test, hyperextension test, and hyperflexion test are objective tests because they have built-in safeguards to disclose dishonest responses from the patient. He illustrated by describing the Tinel's test, in which the doctor taps along the nerve root. If the patient describes a tingling or electrical sensation it is a positive indicator of irritated or damaged nerve fibers. Dr. Peeples said that, without telling the patient what response he expects, he also taps in some areas that are outside the nerve pathway to give the patient the opportunity to report sensations that would be misleading. Dr. Peeples testified:

> I think it's important to understand that the system can only work if you reasonably assume that people are telling you how their body feels. And to check a nerve or to check many things, you have to ask someone, "Is this tender?"
>
> Now, that is different from the subjective description of, "I have pains that shoot out my ears," or, "I have pains that run down my spine." That is a subjective description.
>
> But if I tap a particular location or if I place a joint in a particular position and say, "Does this hurt as opposed to this position?" then I'm asking for the patient to use their nervous system to tell me what makes them comfortable or uncomfortable. And that is objective. The patient must communicate that to me. Obviously, I cannot perform these tests on a comatose patient.

Nevertheless, the majority holds that because these diagnostic tests rely on the patient's verbal descriptions of physical sensations produced by various stimuli, they are under the "voluntary control" of the patient, and are not, therefore, "objective findings." The majority concludes, "Despite the evidence tending to show the accuracy and reliability of the tests performed on appellant, it is nevertheless clear that they depended on voluntary responses and that the findings obtained from them could be controlled by a *knowledgeable* patient." (Emphasis added.)

To the contrary, I think it would take a highly trained, medically sophisticated patient to know the exact nerve path associated with carpal tunnel syndrome.

Although a patient with carpal tunnel syndrome might voluntarily control her responses to pain, assuming she knew the path of the nerve root, she cannot control the pain itself. And, according to Dr. Peeples, it is not even pain that the carpal tunnel patient is expected to report; it is a tingling or electrical sensation. Dr. Peeples said that he considers the tests involved in diagnosing carpal tunnel syndrome objective tests because of the safeguards which are incorporated into them to insure reliability, and that he relies upon these tests to diagnose and treat carpal tunnel syndrome, even though verbal responses from the patient are essential to the diagnosis. I do not see how then we can say these tests are not objective just because the patient must vocalize her responses to stimuli and the words used are in her voluntary control. And I do not think the Arkansas legislature intended that the medical profession should have to do away with reliable and dependable tests in order to diagnose and treat an employee who has sustained an accidental injury on the job.

Therefore, I dissent.

I am authorized to report that ROGERS, J., joins in this dissent.